UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

_____

INTERNATIONAL ASSOCIATION OF
SHEET METAL, AIR, RAIL AND
TRANSPORTATION WORKERS,
TRANSPORTATION DIVISION
24950 Country Club Blvd., Ste. 340
North Olmsted, OH 44070

SMART-TD GENERAL COMMITTEE
OF ADJUSTMENT GO-169
1855 Shoal Creek Way
Bishop, GA 30621

SMART-TD GCA GO-680
1960 Electric Rd., Ste. C
Roanoke, VA 24018

SMART-TD GCA GO-687,
219 S. Front St., Ste. 302
Fremont, OH 43420

SMART-TD GCA GO-898,
802 N. Main St.
London, KY 40741

   Plaintiffs,

v.

NORFOLK SOUTHERN RAILWAY COMPANY,
1200 Peachtree St. NE
Atlanta, GA 30309

   Defendant.
_____

Civil Action No.

### SMART-TD'S COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF UNDER THE RAILWAY LABOR ACT

Plaintiffs, the Transportation Division of the International Association of Sheet Metal, Air, Rail and Transportation Workers[1] ("SMART-TD"), SMART-TD General Committee of Adjustment ("GCA") GO-169, SMART-TD GCA GO-680, and SMART-TD GCA GO-687, and SMART-TD GCA GO-898, seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive relief against Defendant Norfolk Southern Railroad Company ("NSR" or "the Carrier").

## JURISDICTION AND VENUE

1.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (Act regulating commerce, *viz.*, the Railway Labor Act, 45 U.S.C. § 151, *et seq*.), and 2201 (declaratory judgments).

2.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) and (c) because NSR operates through this judicial district, and because NSR is subject to personal jurisdiction here.

## PARTIES

3.     Plaintiff SMART-TD, formerly United Transportation Union, is the duly authorized representative for the purposes of the Railway Labor Act ("RLA" or "the Act") of the crafts or classes of train service employees, including Conductors, employed by NSR, and is a "representative" as defined by Section 1 Sixth of the RLA, 45 U.S.C. § 151 Sixth. SMART-TD is located at 24950 Country Club Boulevard, Ste. 340, North Olmsted, Ohio. SMART-TD's General Committees of Adjustment ("GCA") are semi-autonomous, mid-level bodies responsible for negotiating and policing the collective-bargaining agreement ("CBA") under their

[1] United Transportation Union ("UTU") and the Sheet Metal Workers International Association have merged to form SMART.  The former UTU is now the Transportation Division of SMART.

jurisdiction. SMART-TD GCA GO-169, the subordinate body with jurisdiction over certain predecessor railroads including the Central of Georgia, is located at 1855 Shoal Creek Way, Bishop, Georgia. The General Chairperson ("GC") of GCA GO-169 is J. Stewart. SMART-TD GCA GO-680, the subordinate body with jurisdiction over the former Norfolk & Western Railway is located at 1960 Electric Rd., Ste. C, Roanoke, Virginia. The GC of GCA GO-680 is D.W. Phillips. SMART-TD GCA GO-687, the subordinate body with jurisdiction over the former Nickelplate, Wabash Railroad, and Grand Elk Railroad, is located at 219 S. Front St., Ste. 302, Fremont, Ohio. The GC of GCA GO-687 is J. Ball. SMART-TD GCA GO-898, the subordinate body with jurisdiction over the former Southern Railway, is located at 802 N. Main St., London, Kentucky. The GC of GCA GO-898 is T. Gholson.

4.      The Brotherhood of Locomotive Engineers and Trainmen ("BLET"), a non-party to the instant action, is the duly authorized representative for the purposes of the RLA of the crafts or classes of engine service employees, including Engineers, employed by NSR, and is a "representative" as defined by Section 1 Sixth of the RLA, 45 U.S.C. § 151 Sixth. As the representative for Engineers, BLET negotiates and enforces the CBAs for those employees in the engine service craft, whereas SMART-TD negotiates and enforces the CBAs for those employees in the train service craft. BLET's headquarters is located at 7061 E Pleasant Valley Rd, Independence, Ohio 44131.

5.      Defendant NSR is a carrier by rail as defined in the ICC Termination Act, 49 U.S.C. § 10102, and a carrier as defined in Section 1 First of the RLA, 45 U.S.C. § 151, First. NSR has its principal operating office in Atlanta, Georgia, and operates within this judicial district.

## CLAIM FOR RELIEF

### Collective Bargaining under the Railway Labor Act

6.      Collective bargaining between railroads and their employees' representatives over rates of pay, rules and working conditions is governed by the RLA. Collective-bargaining agreements thereunder are amended through the service of written notice of intended changes in agreements affecting rates of pay, rules or working conditions, pursuant to Section 6 of the RLA, 45 U.S.C. § 156. Such proposals, called "Section 6 Notices," are negotiated in conferences between representatives designated and authorized by the carrier or carriers, and by the collective bargaining representative(s) of their employees. 45 U.S.C. §§ 152 Second, 156. If conferences fail, the dispute is subject to mediation by the National Mediation Board ("NMB"). 45 U.S.C. § 155 First. If mediation fails, the President of the United States may appoint a Presidential Emergency Board ("PEB") to investigate and issue recommendations for settlement of the dispute. 45 U.S.C. § 160. Until these procedures are exhausted, and for thirty days thereafter, parties must maintain the status quo established by existing agreements. 45 U.S.C. §§ 152 First, 152 Seventh, 156, 160.

### The Status Quo Requirement under the Railway Labor Act

7.      Pursuant to § 2 First, 45 U.S.C. § 152 First, the Act requires that the parties make and maintain agreements. As noted, the Act also provides very specific and mandatory procedures for how agreements can be changed or modified. Until these procedures are exhausted, and for thirty days thereafter, parties must maintain the status quo established by existing agreements. 45 U.S.C. §§ 152 First, 152 Seventh, 156, 160.

8.      Section 2 First of the RLA, provides:

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to <u>make and maintain agreements concerning rates of pay, rules, and working conditions</u>, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to

commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

45 U.S.C. § 152 First (emphasis added).

9.      Furthermore, the RLA mandates a very specific procedure to change working conditions. Section 6 of the RLA, provides:

Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice.

45 U.S.C. § 156.

10.     Taken together, these sections of the RLA require carriers to maintain the status quo with respect to rates of pay, rules, and working conditions until the mandatory notice, negotiation, and mediation procedures of the Act are completed.

11.     Federal courts are empowered to issue injunctions to stop unilateral action by a rail carrier during this process of resolution.

12.     SMART-TD and NSR are parties to several agreements that control and detail the terms and conditions of employment for the class and/or craft of train service employees represented by SMART-TD.

13.     This action involves NSR's unilateral change of the CBA in violation of the Railway Labor Act. The CBAs explicitly state:

No … engine or non-craft employee will be used to supplement, supplant or substitute in the work of any train or yard crew working under UTU Agreements.

Despite this plain and unambiguous language, NSR has utilized Engine service employees, who are in a separate and distinct craft or class and represented by a different union, to supplement, supplant or substitute work assigned to train or yard employees represented by SMART-TD,

formerly UTU. Through its actions, NSR has unlawfully changed those agreement provisions without bargaining.

14.      NSR's rail system is separated into geographic divisions along its predecessor carrier lines.

15.      NSR's predecessor carriers and SMART-TD's predecessor GCA's are parties to CBAs which contain what are called "Crew-Consist Agreements," which establish the composition of the train crew. Each of these respective Crew-Consist Agreements expressly forbid the Carrier from utilizing "engine … service employees … to supplement, supplant, or substitute" work assigned to road or yard service employees.

16.      Article 4 of the 1984 Crew Consist Agreement between NSR and GO-169 states, in pertinent part:

> (a) Employees will not be required to operate with less than the required crew consist specified in this Agreement, nor will they be censured or disciplined in any manner for refusal to do so.
> (b) <u>No</u> Carrier supervisor, yardmaster, official, <u>engine</u> or non-craft <u>employee will be used to supplement, supplant or substitute in the work of any train or yard crew working under UTU Agreements</u>.

Identical provisions within the Crew Consist Provisions and entitled "Restrictions on the Carrier" are set forth in the applicable CBAs between GCA GO-687 and NSR, and GO-898 and NSR.

17.      Article 4 of the 1984 Crew Consist Agreement between NSR and GO-680 states, in pertinent part:

> (a) Employees will not be required to operate with less than the required crew consist specified in this Agreement, nor will they be censured or disciplined in any manner for refusal to do so.
> (b) <u>No</u> Carrier supervisor, yardmaster, official, <u>engine</u> or non-train <u>service employee will be used to supplement, supplant or substitute in the performance of service which is assigned to any road or yard service employee(s) and to which entitled under applicable UTU Agreements</u>.

18.     In accordance with the parties' CBA, Conductors are called to fill positions based on seniority, subject to first in, first out rules of the craft. The seniority-based system for calling or assigning Conductors to certain jobs is set forth in the call tables. The call tables set forth a list of how Conductors will be called, or assigned, within a specific seniority district. In lieu of following those call tables, NSR is doing a manual override in order to force assign Engineers to Conductor assignments.

19.     Notwithstanding the plain and unambiguous CBA language, the Carrier has on repeated recent occasions forced Engineers to work as Conductors in lieu of calling other rested conductors on the Blue Ridge Division, Elmore District; the Dearborn Division, Buffalo District; and the Dearborn Division, Elkhart Division; among other locations. As an example, on August 9, 2021, the Carrier forced an Engineer to work as a Conductor on the Blue Ridge Division, Radford District. Similarly, on September 22, 2021, the Carrier forced an Engineer to work as a Conductor on assignment BBBB02EQ in the Dearborn Division, Bellevue District. On September 23, 2021, the Carrier forced an Engineer to work as a Conductor on assignment EXD003E2 in the Dearborn Division, Bellevue District. On September 24, 2021, the Carrier forced an Engineer to work as a Conductor on assignment BPBP06EN in the Dearborn Division, Bellevue District.

20.     By separate letters dated August 10 and September 24, 2021, the SMART-TD General Chairpersons objected to the Carrier's unilateral actions regarding utilizing Engineers to perform Conductor work, which violate the parties' crew consist provisions set forth in their respective agreements.

21.     SMART-TD GC of GO-680 David Phillips met with the Carrier on August 26, 2021, to discuss the Carrier's violations of the Crew Consist Agreement, but no resolution was

7

reached. The Carrier responded by letter dated September 2, 2021, contending in part that its actions were permissible.

22.     Despite the Union's best efforts to resolve the matter, the Carrier has refused.

23.     By its actions set forth above, NSR is violating its obligation to make and maintain agreements as required by Section 2 First and Section 6 of the RLA, 45 U.S.C. §§ 152 First, 156, and has violated the status quo requirement, entitling SMART-TD to declaratory and injunctive relief.

24.     By its actions set forth above, NSR has failed to negotiate changes and maintain the status quo during such period in violation of Section 2 First and Section 6 of the RLA, 45 U.S.C. §§ 152 First, 156, entitling Plaintiffs to a status quo injunction.

**WHEREFORE,** the Plaintiffs request that this Court:

A.     Issue a Declaratory Judgment that NSR's actions unlawfully change the status quo and violate the Carrier's obligations under the RLA;

B.     Bar NSR from implementing any change with regard to unilaterally utilizing ENGINE or non-train service employees to supplement, supplant, or substitute in the performance of service assigned to road or yard service employees represented by SMART-TD without first exhausting the Section 6 process;

C.     Issue injunctive relief enjoining Defendant NSR, its officers, agents, servants, employees, attorneys and those persons in active concert or participation with it who receive actual notice from utilizing ENGINE or non-train service employees to supplement, supplant, or substitute in the performance of service assigned to road or yard service employees represented by SMART-TD; and

D.     Award Plaintiffs their costs and attorney's fees incurred is this proceeding; and

E.     Grant Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Erika A. Diehl-Gibbons
Erika A. Diehl-Gibbons
Associate General Counsel
Kevin C. Brodar
General Counsel
SMART-Transportation Division
24950 Country Club Blvd., Ste. 340
North Olmsted, OH 44070
Tel: (216) 228-9400
Fax: (216) 228-0937
kbrodar@smart-union.org
ediehl@smart-union.org

Attorneys for Plaintiffs SMART-TD,
SMART-TD GCA GO-169, SMART-TD
GCA GO-680, SMART-TD GCA GO-687,
SMART-TD GCA GO-898